PERCY K. HEXTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 7878. Promulgated October 21, 1927.

1. A corporation issued its stock under a contract in part pay-
ment for services to be rendered. The contract provided that if the
party to whom the stock was issued ceased to be employed by the
corporation through no fault of his own then the stock was to be-
come unconditionally the property of the party to whom issued.
The party was discharged without fault of his own. In proceed-
ings by the corporation to recover the stock a decision adverse to
the corporation was rendered by the lower court and the appellate
court. *Held,* under the contract the stock was not income during
the year in which the final court decision was rendered.

2. Where petitioner's books are kept and his income-tax returns
are made on the cash receipts and disbursements basis, *held,* that
notes received in compromise of a damage suit which did not have
a market value do not constitute taxable income for the year in
which received.

*Harry W. Mack, Esq.,* for the petitioner.
*L. C. Mitchell, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in
income tax of $44,541.34 for 1920. The deficiency results from the
respondent having increased the petitioner's taxable income by the
amount of $116,650, representing cash and the market value of notes
received by the petitioner on December 31, 1920, and the value of
certain corporate stock, certificate for which was on that date in the
possession of the petitioner. The cash and notes were received in
connection with the settlement and compromise of a damage suit
instituted by the petitioner and then pending.

FINDINGS OF FACT.

On December 26, 1916, the petitioner entered into a contract with
the Day-Elder Motors Co., whereby he was to act as its sales manager
for a period of three years commencing on that date. The contract
provided that should the company sell or receive orders for at least
1,400 motor truck chassis within the said three years the contract
was to be renewed for a further period of five years, and if during
the said period of five years the company should receive orders for
4,000 motor truck chassis the contract was to be renewed for an addi-
tional period of five years.

In addition to providing for the remuneration of the petitioner,
it was further agreed that the corporation should at once deliver
to the petitioner as further payment for the services to be rendered
by him 5,000 shares of the common stock of a par value of $10 per

share of the Day-Elder Motors Corporation, a corporation about to be organized subject to certain conditions to be annexed to the certificate of stock, of which the following are pertinent:

1. That all dividends paid on the stock should be paid to the petitioner so long as he should be employed by the corporation.

2. That should the petitioner not be entitled to a renewal of the contract as provided or in the event of the breach of any of the terms by the petitioner, the stock should revert to the corporation except as otherwise provided therein.

3. That should the petitioner perform all of the terms and conditions of the agreement to be performed by him and the corporation sell or receive within the first 3-year period orders for at least 1,400 motor truck chassis, then such proportional part of the shares of stock issued to the petitioner should thereupon become his property unconditionally as the number of motor truck chassis sold and delivered bore to 10,000.

4. That should the petitioner cease to be employed by the corporation without any fault of his own, all the stock which had not theretofore become his property unconditionally should immediately and upon such event become his property unconditionally.

In accordance with a provision contained in the contract it was subsequently assigned to the Day-Elder Motors Corporation.

Pursuant to the agreement, the petitioner received in January, 1917, a certificate for 5,000 shares of stock of the Day-Elder Motors Corporation.

On the certificate appeared an endorsement declaring that it was not assignable or transferable except in accordance with the terms of the contract of December 26, 1916. The petitioner retained the certificate until January, 1921, when in accordance with another contract he exchanged it for a new certificate for the same number of shares.

On September 21, 1918, the petitioner and the Day-Elder Motors Corporation entered into a contract, which after reciting that the contract between the petitioner and the Day-Elder Motors Co. had been assigned to the Day-Elder Motors Corporation and that as the petitioner had received a commission in the Army of the United States, modified the contract of December 26, 1916, by providing that from October 1, 1918, and so long as the petitioner remained in the Army he should be relieved of active service to the corporation, should receive reduced compensation, and that certain expenses of the sales organization of the corporation previously borne by him would during the time he remained in the Army be borne by the corporation. It was also provided that with the foregoing exceptions the contract of December 26, 1916, should remain in effect and that upon the petitioner's separation from the Army the contract as originally

made should go into full force and effect, and the modification come to an end.

When the petitioner sought to reenter the employ of the corporation after his separation from the Army in 1919, a controversy arose between the parties and in July, 1919, the petitioner was discharged by the corporation without any fault on his part. The Day-Elder Motors Corporation thereupon brought an action against the petitioner to recover the 5,000 shares of stock theretofore delivered to him and the petitioner brought suit against the corporation for damages in the amount of $1,000,000 because of alleged breach of contract. The first action was decided in the petitioner's favor and on April 19, 1920, there was filed in favor of the petitioner in the Court of Chancery of New Jersey a decree which contained the following:

* * * And it further appearing that the defendant has ceased to be employed by the complainant without any fault on the part of the defendant, and the defendant is entitled to relief upon his counterclaim as hereinafter granted:

It is, * * * ordered, adjudged and decreed that the complainant's bill of complaint be and the same is hereby dismissed with costs;

And it is further ordered, adjudged and decreed * * * that the shares of common capital stock of the complainant, Day-Elder Motors Corporation, represented by certificate No. 8 for five thousand shares of the par value of Ten Dollars ($10) each dated January tenth, Nineteen hundred and seventeen, and now in the possession of the defendant, having become the property of the defendant unconditionally, and that the limitations relative to the assignment and transfer of said shares of stock endorsed upon said certificate, be and the same are hereby cancelled, declared null and void and of no effect whatsoever.

The corporation took an appeal to the Court of Errors and Appeals, where a decision was rendered in 1920 in favor of the petitioner herein. Subsequently and while the petitioner's suit against the corporation was still pending, the following agreement was entered into about six o'clock in the afternoon of December 31, 1920, between the petitioner and the Day-Elder Motors Corporation:

AGREEMENT, made this 31st day of December, 1920, between DAY-ELDER MOTORS CORPORATION, a corporation organized and existing under the laws of the State of New Jersey, of the first part, and PERCY K. HEXTER, of Mamaroneck, in the State of New York, of the second part;

WHEREAS the parties hereto entered into a contract on December 26, 1916, whereby the corporation employed and engaged the said Hexter as its salesmanager for a period of three years, to commence on the 26th day of December, 1916, which contract by reason of certain provisions therein was subject to renewal for two further periods, the last of which will expire the 26th day of December, 1929; and

WHEREAS certain differences arose between the parties resulting in a breach of said contract, and extended litigation thereover in the Court of Chancery of New Jersey and in the District Court of the United States for the District of New Jersey, in which last mentioned court there is now pending at issue an action at law brought by the said Hexter against the said corporation; and

WHEREAS the parties hereto have negotiated a settlement and compromise of their differences arising out of said contract, on the terms and conditions hereinafter set forth:

Now, THIS AGREEMENT, in consideration of the premises and the payments, promises and agreements hereinafter set forth and contained, WITNESSETH as follows:—

1. The said corporation agrees to pay and the said Hexter agrees to accept in full settlement and compromise of all claims under or by reason of said contract on the part of the said Hexter against the said corporation to the day of the date hereof, the sum of One hundred thousand dollars ($100,000), to be paid as follows:

Ten thousand dollars ($10,000) in cash on the execution and delivery of this agreement.

Fifteen thousand dollars ($15,000) on January 4, 1921.

Twenty-five thousand dollars ($25,000) on the 31st day of January, 1921, to be evidenced by the promissory note of the corporation of this date, payable on January 31, 1921, with interest at 6%.

Fifty thousand dollars ($50,000) in eight quarterly payments of $6,250 each, on April 1, 1921, July 1, 1921, October 1, 1921, January 1, 1922, April 1, 1922, July 1, 1922, October 1, 1922, and January 1, 1923, to be evidenced by eight nonnegotiable promissory notes of this date payable on the dates above mentioned, carrying interest at 6% from date to maturity.

2. The said corporation agrees to pay to the said Hexter 2% on the list price on all motor truck chassis sold and delivered, assembled or unassembled, during the period terminating December 26, 1929; said 2% shall be paid by the corporation to the said Hexter on the sales of each month, beginning with January, 1921, on the fifteenth day of the following month, and the said corporation will render to the said Hexter a monthly statement of all sales and deliveries during the month.

3. It is agreed between the parties hereto that the said corporation may at any time satisfy and extinguish the obligations of this contract to the said Hexter by the payment to him of a sum of money to be arrived at as follows: For the purposes of this clause the contract shall be valued at $40,000 per year, payable in twelve monthly installments at the end of each month, to expiration, and the said amount of $40,000 shall be multiplied by the number of years and parts of years this contract may still have to run, less a discount from the amount so arrived at at the rate of 6% on the respective installments to their maturity.

On the payment of the amount so ascertained this contract shall be ended.

4. As a part of this compromise and settlement the said Hexter hereby gives and grants to the said corporation an option to purchase 5000 shares of the common stock of the said corporation belonging to said Hexter for $30,000 in the event that the said corporation shall satisfy and extinguish the obligations of this contract as in the last paragraph provided. The terms of this option shall be noted on the certificate of stock for said shares held by the said Hexter and on any subsequent certificate or certificates therefor.

5. As a further part of this compromise and settlement the said Charles P. Day and Fred G. Elder hereby pledge the stock respectively held by them of the said corporation, and of another corporation known as Day-Elder Realty Corporation, subject to the existing pledge thereof to the Union National Bank of Newark, N. J., to secure, in the event of the Day-Elder Motors Corporation being decreed insolvent or adjudicated bankrupt during the existence of this contract, any claim that in such event may be established by the said Hexter

against the corporate estate, the said stock now pledged, in such event, after satisfaction of the prior pledge to the Union National Bank, to be transferred on the books of the said corporation to said Hexter. A notation that the said stock, which is the subject of this pledge, is subject to this provision of this contract shall be endorsed on the certificates therefor now in possession of the Union National Bank, or on any other certificates at any time issued for said shares of stock or any part thereof. No transfer of the certificates out of the names of said Charles P. Day and Fred G. Elder, or their transferees, shall be made by reason of this pledge except in the event of decreed insolvency or adjudicated bankruptcy as aforesaid, and the voting rights in the stock shall not be affected by this pledge. Nothing herein shall interfere with the substitution of another bank or banks in place of the Union National Bank as prior pledgee of said stock to the same extent as now.

6. The said Hexter hereby discharges and releases the said corporation of and from any and all obligations of the said corporation to him by reason of the said contract of December 26, 1916, or otherwise, to the day of the date hereof.

7. This contract shall bind the successors of the said corporation and the heirs, executors and administrators of the said Hexter, and shall not be affected by the death of the said Hexter.

8. The pending suit of Percy K. Hexter against Day-Elder Motors Corporation, in the District Court of the United States for the District of New Jersey, shall be discontinued without costs to either party.

In accordance with the foregoing agreement, the petitioner on December 31, 1920, received $10,000 in cash and the notes provided for in said agreement. The payment, which was to be made on January 4, 1921, instead of being made in cash as was contemplated, was also evidenced by a negotiable promissory note. All payments of the $100,000 were made in accordance with the contract. As the petitioner did not have his stock certificate with him at the time the agreement was made, the notation relative to the option as provided in paragraph 4 of the contract was not entered thereon. In January, 1921, the petitioner surrendered the certificate for 5,000 shares that had been issued to him in 1917, and in exchange received a new certificate dated December 31, 1920, for the same number of shares of the same class of stock having the same par value, and upon which was made a notation relative to the option as provided for in the agreement of December 31, 1920.

The petitioner kept his books and made his income-tax returns on the cash receipts and disbursements basis. In his return for 1920 the petitioner included the $10,000 cash paid him on December 31, 1920, in pursuance of the agreement of that date. The petitioner reported in his 1921 return the receipt of $15,000 paid him on January 4, $25,000 paid to him on January 31, and $18,750 representing three payments of $6,250 each made to him in April, July, and October of that year. The petitioner reported in his return for 1922 the money received by him from the Day-Elder Motors Corporation in that year and in his 1923 return the money received during that year.

Prior to the making of the settlement on December 31, 1920, the petitioner had made an oral agreement with his attorneys in regard to their fees in connection with his litigation. The terms of the agreement were as set forth in the following letter:

P. K. Hexter,

*1457 Broadway, New York, January 10, 1921.*

Mr. Harry W. Mack,
  *111 Broadway, New York City.*

Dear Harry: In order that there may be no misunderstanding regarding the arrangement for your fees and those of Mr. Lum and Judge Warren in connection with the litigation between me and the Day Elder Motors Corporation, I am writing this letter to confirm my understanding of the arrangement.

Of the $100,000 in cash which I am to receive, part of which has been paid and part evidenced by notes, the attorneys are to receive 25%, of which I have already paid $2500.00. Of this 25% Judge Warren is to receive $2500, and you and Mr. Lum are to divide equally the balance. Judge Warren is to have no further interest in the fees beyond the $2500 mentioned. Payments of this 25% are to be made when, as and if the money is paid to me by the Day Elder Motors Corporation.

Of the 2% which I am to receive monthly under the terms of settlement on sales made subsequent to the 1st of January of this year, I am to pay $\frac{1}{10}$ to you and Mr. Lum, each of you to receive $\frac{1}{20}$. These payments are also to be made to you and Mr. Lum when, as and if received.

It is understood that the payments above mentioned are in full settlement not only for all services heretofore rendered, but are to cover also any services necessary on the part of Mr. Lum and yourself to enforce the agreement of settlement with the Day Elder Motors Corporation.

I am forwarding a copy of this letter signed to Mr. Lum and Judge Warren and have asked them to write confirming the correctness of my understanding of our agreement.

  Very truly yours,

(Signed)      P. K. Hexter.

Copies sent to—
Mr. Lum
Judge Warren.

The foregoing was the only \.. 3 executed by the petitioner in regard to attorney fees.

Pursuant to the agreement with his attorneys, the petitioner on December 31, 1920, after receiving the payment of $10,000 paid them $2,500, issuing to each of them a check for one-third of the amount. Thereafter, when the petitioner received payments under the settlement, he would cash the check and then draw a check or checks in favor of his attorneys.

At the time of the settlement the Day-Elder Motors Corporation owed the Union National Bank of Newark, N. J., about $300,000. The corporation undertook to borrow $100,000 from the bank to pay the petitioner and prior to the date of the settlement had approached the officials of the bank in regard to a loan of that amount. The bank had a capital stock of $3,000,000, and as the corporation already

owed it $300,000, the loan was denied. The bank, however, was merging with another bank on the first working day of January, 1921, and advised the corporation that it would assist it at that time. In loaning money to the Day-Elder Motors Corporation the bank insisted that the president and treasurer of the corporation endorse the notes and also that those officers pledge as security stock owned by them in the corporation, together with the stock they owned in another corporation known as the Day-Elder Realty Corporation. The corporation in 1920 attempted to borrow money on its notes in the open market but was unable to borrow even the amount of $15,000 which was to be paid in cash to the petitioner under the contract.

Late in 1920 a revenue agent audited the books of the Day-Elder Motors Corporation and advised its officers that his audit showed that the corporation owed the Government about $110,000 additional tax. Prior to the settlement on December 31, 1920, the corporation communicated this information to the Union National Bank of Newark. The petitioner at the time of the settlement had information from his attorneys regarding the financial condition of the Day-Elder Motors Corporation.

In issuing the common stock of the Day-Elder Motors Corporation to the public, it was not sold, but was given as a bonus with the sale of preferred stock.

The corporation sold about 400 trucks in 1917, between 900 and 1,000 in 1918, and 1,044 in 1919, 1922, 1923, and 1924.

OPINION.

TRAMMELL: The respondent has increased the income reported by the petitioner for 1920 by $116,650. Of this amount $16,650 represents the value at $3.33 per share of the 5,000 shares of the common stock of the Day-Elder Motors Corporation, the certificate for which was issued to the petitioner in January, 1917. The remaining $100,000 is composed of $10,000 cash, the face value of two negotiable notes for $15,000 and $25,000, respectively, and eight nonnegotiable notes of $6,250 each.

In regard to the stock, petitioner contends that it became his absolutely prior to 1920, that there was no transaction in 1920 regarding the stock which would make it taxable to him in that year, and that all that was done in 1920 was the rendering by the court of a decision that the conditions and limitations appearing on the certificate of stock were null and void.

We have found that in January, 1917, in accordance with the contract of December 26, 1916, between the petitioner and the Day-Elder Motors Co. the petitioner received a certificate for 5,000 shares

of stock. Two of the conditions under which the stock was issued were: First, that should the petitioner perform all of the terms and conditions of the agreement to be performed by him, and the corporation sell or receive within the first 3-year period orders for at least 1,400 motor truck chassis, then such proportional part of the shares of stock issued to the petitioner should thereupon become his property unconditionally as the number of motor truck chassis sold and delivered bore to 10,000; second, that should the petitioner cease to be employed by the corporation without any fault of his own, the stock which had not theretofore become his property unconditionally should immediately and on such event become his property unconditionally. About July, 1919, the petitioner was discharged by the corporation without any fault on his part. The corporation brought an action to recover the stock. In April, 1920, a decree was entered in favor of the petitioner. The corporation appealed and subsequently during the year the decision of the lower court was affirmed.

Since the contract contained the provision whereby upon the petitioner's separation from the service of the company without fault, on his part, the stock was to become his and in view of the decree and decision of the courts, we are of the opinion that the stock was income to the petitioner in a year prior to 1920. The situation in regard to this point is the converse of that in *Farmers National Bank of Rome, N. Y., Executor*, v. *Commissioner*, 6 B. T. A. 1036, and also that in the case of the *Malleable Iron Range Co.* v. *United States*, 62 Ct. Cls. 425. Prior to 1920 the petitioner had the stock. It became his absolutely under the terms of the contract when the company discharged him without any fault on his part. There was a contingency that the court would hold that he was not entitled to it, but this contingency never happened. On the other hand, the court held it was rightly his when the company, without fault on his part, discharged him. The stock belonged to the petitioner prior to 1920.

Relative to the $10,000 in cash received by the petitioner on December 31, 1920, the respondent admits that it was reported in the petitioner's returns filed. The addition of this amount by the respondent to the income reported in the returns was therefore erroneous.

In regard to the notes, the controversy resolves itself into the question of whether the notes received by the petitioner under the circumstances involved here constitute taxable income for the year 1920. The petitioner concedes that the actual cash he received as a result of the settlement of December 31, 1920, is income. The $10,000 in cash received in 1920 was reported by him in his return for that year, and the moneys received by him during 1921, 1922, and 1923 in payment of the notes have been included by him in his returns as income for the years in which received. His contention is that

inasmuch as he keeps his books on the cash receipts and disbursements basis, he received income from the settlement only when and to the extent that he received cash.

Section 213 of the Revenue Act of 1918 provides:

That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income * * * of whatever kind and in whatever form paid * * *. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period * * *.

Section 212 (b) of the same Act provides:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income.

We have heretofore considered the question as to what time property received in compensation for personal services constitutes income. In the *Appeal of Minal E. Young, Executor*, 6 B. T. A. 472, we said:

We have held that the question whether the receipt of property as compensation for services results in taxable gain at the time received is dependent on the fact whether such property has a market value at that time. If it has no market value when received, no taxable gain results from its receipt. *Appeal of William J. Conlin*, 1 B. T. A. 472; *Appeal of M. J. Sullivan*, 2 B. T. A. 1012. In such cases the gain subject to tax is realized when the property is sold or exchanged for other property that has a market value. The transaction resulting in taxable gain or profit is not completed until such time. If the property had a market value when Curtis received it for services, the transaction would then have been completed and would have resulted in gain at that time.

We have also had occasion to consider the question of whether notes constituted property, and in the *Appeal of Aaron W. Wolfson*, 1 B. T. A. 538, we held that promissory notes are property.

When a taxpayer keeps his accounts and renders his returns on the basis of cash receipts and disbursements, the tax is levied only upon gains, profits and income received in money or in that which is the equivalent of money, that is, something having an exchangeable or reasonable market value.

On the question of the market value of the notes, the evidence, briefly summarized, is as follows:

The Union National Bank, which by the end of 1920 had loaned an amount equal to 10 per cent of its capital stock to the corporation,

declined to make further loans in that year. The bank declined to make loans to the corporation unless the corporation's notes were endorsed by its president and treasurer and accompanied by security. In 1920 the corporation was in need of funds and attempted to borrow money on its notes in the open market but was unable to do so. The corporation in 1920 undertook to borrow the $100,000 to pay the petitioner but was unable to do so and was unable to borrow even the $15,000 to make the payment due in January, 1921. Not only was the corporation in need of funds in addition to the money it sought with which to pay the petitioner, but late in 1920 it received a notice from the collector of an additional income-tax liability of $119,000 which it did not have the cash to pay. There was also evidence to the effect that in 1920 the corporation was insolvent, although this fact was not ascertained until 1926 when it went into the hands of receivers.

We have considered all the evidence and, in our opinion, the preponderance of the evidence is to the effect that the notes did not have a market value when received in 1920 and were not the equivalent to cash. The receipt thereof in 1920 therefore did not constitute taxable income.

In view of our opinion that the notes did not constitute taxable income, it becomes unnecessary to decide the remaining question with respect to the attorney fees.

We think that the manner of reporting the income adopted by the petitioner, under the facts of the case, was correct.

Reviewed by the Board.

> *Judgment will be entered after notice of 15 days, under Rule 50.*